IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
Matthew J. Debeikes,            )
                                )
            Plaintiff,          )
                                )
     vs.                        )   Civil No. 13-00504 ACK-RLP
                                )
Hawaiian Airlines, Inc. and     )
Association of Flight           )
Attendants-CWA, AFL-CIO,        )
                                )
            Defendants.         )
_____ )

**ORDER GRANTING SUMMARY JUDGMENT AS TO THE MOTIONS TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT OF DEFENDANTS HAWAIIAN
AIRLINES, INC. AND ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO**

         For the reasons set forth below, the Court GRANTS

summary judgment in response to Defendant Hawaiian Airlines,

Inc.'s Motion to Dismiss, or in the Alternative, Grant Summary

Judgment, ECF No. 85, the Joinder thereto of Defendant

Association of Flight Attendants-CWA, AFL-CIO, ECF No. 90,

Defendant Association of Flight Attendants-CWA, AFL-CIO's Motion

to Dismiss or, in the Alternative, for Summary Judgment, ECF No.

94, and the Joinder thereto of Defendant Hawaiian Airlines, Inc.,

ECF No. 99.

**PROCEDURAL BACKGROUND**

         On October 3, 2013, Plaintiff Matthew J. Debeikes

("Debeikes" or "Plaintiff") filed a complaint against Defendant

Hawaiian Airlines, Inc. ("Hawaiian Airlines") and Defendant

1

Association of Flight Attendants-CWA, AFL-CIO ("AFA") (collectively, "Defendants"). Compl., ECF No. 1. The Complaint alleged that Defendants forced Plaintiff into early retirement on May 29, 2013. Id. ¶¶ 9, 14, ECF No. 1. Specifically, the Complaint contended that Hawaiian Airlines violated the collective bargaining agreement ("CBA") governing the terms and conditions of Debeikes' employment with the company, and that AFA breached its duty to fairly represent Plaintiff as one of its bargaining unit members.[1] Id. ¶¶ 11, 12.

On October 30, 2014, both Defendants moved for summary judgment. AFA filed a Motion for Summary Judgment ("MSJ") as to Plaintiff's claim that it breached the union's DFR, ECF No. 51, and Hawaiian Airlines filed a MSJ as to all of Plaintiff's claims, ECF No. 54.

On February 17, 2015, the Court granted Defendants' MSJs as to all of Plaintiff's claims. ECF No. 75. In the Order, the Court concluded that none of Plaintiff's claims, as presented in the Complaint, was viable. First, the Court found that

---

[1] As explained in the Court's prior Order Granting the Motions for Summary Judgment of Defendants Hawaiian Airlines, Inc. and Association of Flight Attendants-CWA, AFL-CIO ("Order"), Debeikes' Complaint pleaded a "hybrid § 301/fair representation" claim. Order at 21, ECF No. 75. Such a claim exempts from federally-mandated arbitration those claims alleging *both* that (1) a plaintiff's employer violated a CBA, and (2) his union breached its duty of fair representation ("DFR") in challenging the CBA violation. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983).

Plaintiff's allegations of "constructive discharge," related to Hawaiian Airlines' "refus[al] to abide by the CBA," were preempted by his breach of CBA claim.  In addition, the Court found that the claim of constructive discharge was unsupported on the merits.  <u>See</u> Order at 26-30, ECF No. 75.  Second, the Court concluded that it lacked jurisdiction to hear Plaintiff's breach of CBA claim against Hawaiian Airlines, given that Debeikes had retired and filed suit without exhausting the CBA's grievance procedures.  <u>See</u> <u>id.</u> at 39.  Third, the Court concluded that it must dismiss Plaintiff's breach of DFR claim against AFA because his breach of CBA claim was not viable, consistent with <u>Bliesner v. Commc'n Workers of Am.</u>, 464 F.3d 910, 913 (9th Cir. 2006).  <u>See</u> <u>id.</u>  In the alternative, the Court also concluded that none of Plaintiff's factual allegations stated a viable breach of DFR claim.  <u>See</u> <u>id.</u> at 40-63.

The Order dismissed Plaintiff's claims without prejudice and granted Debeikes 30-days' leave to file an Amended Complaint.  <u>Id.</u> at 64.  On March 11, 2015, Debeikes filed his First Amended Complaint ("Am. Compl."), again purporting to bring a hybrid § 301/fair representation claim against AFA and Hawaiian Airlines while also claiming "constructive discharge."[2/]  Am.

---

[2/] The Amended Complaint also purports to invoke the Labor Management Relations Act ("LMRA"), although it does not thereafter articulate a claim under the LMRA.  In any event, the LMRA does not apply to this case.  Disputes involving airlines and their employees are covered by the Railway Labor Act ("RLA"),

Compl. ¶¶ 8-14, ECF No. 80.

On March 25, 2015, Hawaiian Airlines filed its Motion to Dismiss, or in the Alternative, Grant Summary Judgment ("Hawaiian Airlines' MTD/MSJ"), ECF No. 85, accompanied by a Concise Statement of Facts ("Hawaiian Airlines' CSF"), ECF No. 86.[3/]  AFA filed a Joinder to Hawaiian Airlines' MTD/MSJ on March 31, 2015.  ECF No. 90.  On March 31, 2015, the parties also attended a Final Pretrial Conference with Magistrate Judge Puglisi.  As memorialized in the conference minutes, the Court set a continued trial date, and Plaintiff requested to re-open discovery.  He was expressly "advised to file [a] Motion for Additional Discovery."  Minutes of Conf. of Mar. 31, 2015, ECF No. 91.  Plaintiff did not, however, proceed to file such a motion.

On April 14, 2015, AFA also filed its own Motion to Dismiss or, in the Alternative, for Summary Judgment ("AFA's MTD/MSJ"), ECF No. 94, accompanied by a Concise Statement of

_____

45 U.S.C. § 151 *et seq.*  The LMRA specifically excludes from its coverage entities covered by the RLA.  29 U.S.C. § 152(2).

[3/] On April 24, 2015, Hawaiian Airlines also filed a separate "Motion for Sanctions Pursuant to FRCP Rule 11" related to Plaintiff's Am. Compl.  ECF No. 97.  Magistrate Judge Puglisi denied Hawaiian Airlines' motion for sanctions on October 13, 2015, granting the company leave to "file a second motion seeking Rule 11 sanctions after the district court issues its decision on the pending motions to dismiss or for summary judgment."  See Order Denying Without Prejudice Defendant Hawaiian Airlines, Inc.'s Motion for Sanctions Pursuant to FRCP Rule 11 at 2-3, ECF No. 141.

Facts ("AFA's CSF"), ECF No. 95.  Hawaiian Airlines filed a

Joinder to AFA's MTD/MSJ on May 7, 2015.  ECF No. 99.

On May 7, 2015, Plaintiff filed an Opposition to AFA's

MTD/MSJ, ECF No. 103, and a Concise Statement in Opposition to

AFA's MTD/MSJ ("Plf.'s CSF - AFA"), ECF No. 105.  On the same

day, Plaintiff also filed an Opposition to Hawaiian Airlines'

MTD/MSJ, ECF No. 102, and a Concise Statement in Opposition to

Hawaiian Airlines' MTD/MSJ ("Plf.'s CSF - Hawaiian Airlines"),

ECF No. 104.  Neither of Plaintiff's Oppositions raised any issue

related to discovery.  On May 14, 2015, AFA filed a Reply

Memorandum in Support of MTD/MSJ ("AFA Reply"), ECF No. 108, and

Hawaiian Airlines filed a Reply Memorandum in Support of MTD/MSJ,

ECF No. 110 ("Hawaiian Airlines Reply"), ECF No. 110.  Hawaiian

Airlines' MTD/MSJ and AFA's MTD/MSJ were set for a consolidated

hearing on May 28, 2015.  See Notices of Hearing on Motions, ECF

Nos. 93, 96.

On May 11, 2015, the Court issued a Minute Order

observing that Defendants' MTD/MSJs were filed after the

dispositive motions deadline had passed.[4/]  The parties were

therefore "encouraged to stipulate to an extension of the

dispositive motions deadline."  If such an agreement was not

_____

[4/] Pursuant to the Rule 16 Scheduling Order in this case,
the dispositive motions deadline was December 10, 2014, and the
discovery deadline was March 13, 2015.  See Scheduling Order, ECF
No. 23; Am. Scheduling Order, ECF No. 92.

possible, the parties were "directed to seek a conference regarding such extension with Judge Puglisi prior to the hearing scheduled for May 28, 2015 on Defendants' motions."  ECF No. 107.

The parties did not reach an agreement as to a stipulation to extend the dispositive motions deadline.  Instead, the parties attended a telephonic status conference with Magistrate Judge Puglisi on May 27, 2015, after which the Court issued an order extending the dispositive motions deadline, *nunc pro tunc*, to April 15, 2015.  This allowed Defendants' motions to be considered timely.  Minutes of Conf. of May 27, 2015, ECF No. 116.  The Court's Minutes also reflect that Plaintiff's counsel raised at the May 27, 2015 status conference that "he would like to depose the declarants who submitted declarations in support of the Motion to Dismiss or, in the Alternative, for Summary Judgment."  Id.

Plaintiff's counsel raised the same request the next day at the Court's scheduled hearing on Defendants' summary judgment motions.  He made an oral motion to continue the hearing and read the minutes of the May 27, 2015 conference into the record.  The Court granted Plaintiff's oral motion to continue the hearing, in order to allow Plaintiff time to file a written motion to reopen discovery.  See Minutes of Hearing of May 28, 2015, ECF No. 117.

Plaintiff filed his Motion to Reopen Discovery on June

16, 2015.  ECF No. 121.  Magistrate Judge Puglisi denied
Plaintiff's motion in its entirety on July 17, 2015, for the
reasons explained in his Order Denying Plaintiff Matthew J.
Debeikes' Motion to Reopen Discovery.  ECF No. 126.  Plaintiff
appealed Magistrate Judge Puglisi's order on July 27, 2015, ECF
No. 127, and the Court set a hearing on Plaintiff's appeal for
September 3, 2015, ECF No. 130.[5/]

The Court denied Plaintiff's appeal on October 9, 2015,
for the reasons set forth at length in its Order Affirming the
Magistrate Judge's Order Denying Plaintiff Matthew J. Debeikes'
Motion to Reopen Discovery.  ECF No. 139.  The Court subsequently
heard oral arguments on Defendants' MTD/MSJs on October 22, 2015.

## FACTUAL BACKGROUND

As a preliminary matter, the Court will consider
documents outside the pleadings in resolving the instant motions.

---

[5/] As discussed at greater length below, the Court also
accepted into the record at the September 3, 2015 hearing a copy
of an Opinion and Award of the System Board of Adjustment, dated
July 15, 2015, related to AFA's "Grievance Concerning Agreement
Section 23.E.10.c" ("Opinion and Award").  ECF No. 132.  On
September 8, 2015, the Court issued a Minute Order directing AFA
to file a copy of the underlying grievance and directing the
parties to file supplemental briefs addressing "the impact of the
Opinion and Award on Plaintiff, given that he is retired" and
"whether the Opinion affects his rights in this action or his
ability to pursue reinstatement and backpay through the
arbitration procedures addressed in the Opinion."  Minute Order
of Sept. 8, 2015, ECF No. 134.
     AFA filed a copy of the underlying grievance on September 9,
2015, ECF No. 135, and each party filed a supplemental brief on
September 23, 2015, ECF Nos. 136, 137, 138.  These documents and
their impact on the instant Order are discussed below.

If matters outside the pleadings are presented to and not excluded by the Court on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the motion is treated as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Where, as here, a movant expressly styles a motion as requesting dismissal or summary judgment in the alternative, a nonmovant is considered to have been "fairly apprised that the district court may look beyond the pleadings." Morrow v. City of Glendale, No. 92-56286, slip op. at * 1 (9th Cir. Mar. 17, 1994).

Additionally, the Court will incorporate below the relevant factual findings set forth in its prior Order. See, e.g., Illinois Nat'l Ins. Co., Inc. v. Nordic PLC Constr., Inc., Civ. No. 11-00515 SOM-KSC, 2013 WL 3975668 * 1 n.1 (D. Haw. July 31, 2013) (resolving summary judgment motion by "incorporat[ing] the facts and procedural history set forth in its prior orders by reference" and "repeat[ing] only the most salient details"); Wapato Heritage, LLC v. U.S., No. CV-08-177-RHW, 2009 WL 3782869 * 1 (E.D. Wash. Nov. 6, 2009) ("The Court incorporates by reference herein the facts set forth in its prior summary judgment order."). Facts determined on the basis of the instant briefing are integrated below with the Court's recitation of its

8

relevant prior factual findings.[6]

Plaintiff was employed as a flight attendant by Hawaiian Airlines from July 9, 1986 to May 29, 2013, during which time he was a member of AFA.  Order at 3, ECF No. 75.  During the period of Debeikes' employment, a CBA between AFA and Hawaiian Airlines covered the terms and conditions of employment for flight attendants.  Hawaiian Airlines maintained a set of "House Rules" during Debeikes' employment.  They provide that sexual harassment is unacceptable and may result in discipline, including discharge.  Id.  The company also maintained a Discrimination and Harassment-Free Work Place Policy (the "Policy"), a violation of which could result in discipline, including discharge.  Id. at 3-4.  The Policy prohibits sexual harassment and provides specific examples of sexual harassment, including: verbal harassment, verbal abuse, physical harassment, visual harassment, and unwanted sexual advances or threats of reprisal.  Id. at 4.

On or about January 14, 2013, Plaintiff served as a flight attendant on a flight from Maui to Seattle with Jane Doe 1 ("Doe 1").  During that flight, Plaintiff engaged her in what his declaration testimony describes as "off-color banter."  He also

---

[6] The Court notes that Plaintiff has stated that he "does not dispute Defendants' citations to" the Court's factual findings in the Order, but merely "disputes the import of the facts."  Plf.'s CSF - Hawaiian Airlines at 2, ECF No. 104, Plf.'s CSF - AFA at 2, ECF No. 105.

discussed with her certain "graphic" online content. During the return flight the next day, it is undisputed that Plaintiff attempted to massage Doe 1's shoulder. Id. Plaintiff also admits that he "may" have touched her again later in the flight. Id. at 5. A few days later, flight attendant Cindy Burt ("Burt"), who was also on the January 14, 2013 flight, told Plaintiff she was displeased with his actions and statements toward Doe 1. Id.

Debeikes wrote an apology letter to Doe 1 and had it delivered to her by another flight attendant. Plaintiff later met with his supervisor, Susan Moss ("Moss"), to describe his conduct toward Doe 1, without disclosing names or dates. Moss received further reports regarding the incident from Burt and the In-Flight Manager for Hawaiian Airlines to whom Doe 1 had recounted the incident in detail. Id.

On or about January 30, 2013, Hawaiian Airlines informed Debeikes that it was holding him out of service with pay, pending an investigation into whether Debeikes had violated the company's House Rules and Policy. Id. The letter informing Plaintiff of the investigation stated broadly that the company had "received reports of potentially improper conduct on a recent flight." Id. at 6. Debeikes received a call from AFA representative Scott Henton ("Henton") a few days later and discussed the situation with him. Id.

On March 8, 2013, Hawaiian Airlines personnel met with Plaintiff for a fact-finding interview.  Debeikes was accompanied by AFA representatives Scott Akau ("Akau") and Henton, who also met with Debeikes to discuss the investigation during the hour prior to the meeting.  At the beginning of the meeting, Henton and Akau requested to examine all documents pertaining to the investigation, citing the CBA's § 23.E.10.c.  Id.  CBA § 23.E.10.c states:

> When a Flight Attendant attends a meeting that may result in disciplinary action, the Flight Attendant and Association member will be allowed adequate time during the meeting to privately review all documents or reports relating to such action.

Id. at 7.

Hawaiian Airlines refused to turn over any investigatory documents.  It was the company's position that CBA § 23.E.10.c applied only to disciplinary proceedings, and not to fact-finding interviews.  AFA disagreed, and Henton and Akau instructed Debeikes not to answer questions.  Having reached an impasse over their conflicting interpretations of CBA § 23.E.10.c, the parties terminated the meeting.  Id.

On March 29, 2013, by letter, Hawaiian Airlines indicated that it wanted to complete its investigation and asked Debeikes if he wanted to be interviewed again.  The letter indicated that if he did not participate, the investigation would be concluded without his input.  It also stated that Hawaiian

11

Airlines still refused to provide "all documents related to and generated from this investigation," and it described the subject of the investigation broadly as "allegations that you may have engaged in conduct violating Company House Rules and the Discrimination and Harassment-Free Work Place policy." Id. at 8.

On April 4, 2013, Henton sent Debeikes a letter on behalf of AFA, advising him of his rights and pointing out that the company could not penalize him for choosing not to attend the interview. The letter noted that AFA continued to disagree with Hawaiian Airlines regarding whether its refusal to produce documents violated the CBA terms. Id. Henton's letter also stated:

> "The decision to participate, or not, in the Company 'EEOC' investigation is yours, however I would advise you that in my experience, in the vast majority of cases, statements made by the accused, are used as evidence against the accused."

Id. at 8-9.

Nonetheless, Debeikes agreed to meet with Hawaiian Airlines personnel again on April 5, 2013. Debeikes was accompanied to the interview by Henton and Akau, who also met with him before the meeting. Id. It is the declaration testimony of AFA's attorney, Jay Trumble ("Trumble"), that he also met with Debeikes before the meeting and repeatedly told Debeikes *not* to attend. He indicates that he told Plaintiff that AFA continued to disagree with Hawaiian Airlines' position

regarding whether CBA § 23.E.10.c obligated the company to produce investigation documents at that time, but that Plaintiff and AFA would be able to review the documents if he waited for the disciplinary hearing.  Id.

Trumble's declaration adds that Plaintiff asked him no questions regarding AFA's position.  Id.  Instead, Plaintiff stated that he wanted to "get it over with," because his anxiety was high and he had been held out of service for weeks.  Id. at 10-11.  Plaintiff's own declaration testimony confirms that Trumble warned him that Hawaiian Airlines may have had another complainant come forward, and that could be why the company did not want to share its documents.  Id. at 11.

In the course of the April 5, 2013 interview, Plaintiff made a variety of admissions regarding the conduct that was the subject of the company's investigation.  He stated, *inter alia*, that he attempted to give Doe 1 a shoulder rub, may have touched her again thereafter, and made sexually explicit comments to her. Plaintiff was also interviewed at the meeting about conduct related to another flight attendant, Jane Doe 2 ("Doe 2"). Debeikes was asked about allegations that he, *inter alia*, rubbed her shoulders and made several specific comments of a highly graphic sexual nature.  Id.  Debeikes did not deny the accusations regarding Doe 2 and instead indicated that he may have done it, but did not remember.  Id. at 12.  Following the

13

meeting, Hawaiian Airlines formally concluded that Debeikes had made unwanted sexual comments to and unwanted physical contact with Does 1 and 2.  Id.

Meanwhile, AFA and Hawaiian Airlines had continued to discuss their disagreement regarding CBA § 23.E.10.c and the company's obligation to provide investigatory documents.  Id. at 13.  On April 3, 2013, AFA representatives including Henton, Akau, and Trumble had met with Hawaiian Airlines representatives to discuss the dispute.  Even earlier, on March 25, 2013, Trumble had sent an email to Sharon Soper, AFA's Master Executive Council ("MEC") President, regarding the disagreement.  Id.

On April 12, 2013, one week after Debeikes' interview with the company, AFA filed Grievance No. 46-99-02-07-13, entitled "Grievance: MEC: EEOC Investigation Documents" (the "Grievance"). It challenged Hawaiian Airlines' refusal to provide documents in what AFA considered a violation of the CBA, specifically § 23.E.10.c.  See Grievance, ECF No. 135.  Trumble and Henton's declarations explain that the Grievance was what the union refers to as a "MEC grievance," a form of prospective class action grievance filed under CBA § 23.D on behalf of all members to challenge Hawaiian Airlines' misinterpretation or misapplication of the CBA terms.  Order at 14, ECF No. 75.

Additional declaration testimony submitted by AFA explains that a MEC grievance differs from a Local Executive

14

Committee ("LEC") grievance under CBA § 23.C, which AFA could have filed had Debeikes actually been disciplined.  LEC grievances challenge discipline issued to individuals and seek retroactive remedies, including reinstatement and backpay.[7/]  Id. at 14 n.8; see also Decl. of Scott Henton ("Henton Decl.") ¶¶ 5, 7, 9-11, ECF No. 95-1 (discussing grievance form differences).

Trumble's declaration testimony is that, had Plaintiff gone through with the disciplinary hearing, AFA would have filed an individual LEC grievance on his behalf regarding the company's denial of documents and any discipline he was issued.  Order at

---

[7/] As relevant to the discussion below, certain timing limitations apply to the processing of LEC grievances under CBA § 23.C.
First, a grievance must be filed within 60 days of when a flight attendant knew or reasonably would have known of the facts on which it is based.
Second, the Director of Inflight Services or his designee must schedule a meeting within 10 days of receiving the grievance.
Third, if the parties cannot resolve the dispute, Hawaiian Airlines shall, upon request, forward the grievance to the Vice President of Inflight Services or his designee, who must evaluate the appeal and furnish a written decision within fifteen days of the meeting.
Fourth, the grievant may appeal that decision to the Hawaiian Airlines Flight Attendants System Board of Adjustment ("SBA") within thirty days.  The CBA does not, however, appear to require the SBA to schedule a hearing on such appeal within any set number of days.
Fifth, once the appeal hearing is held, the SBA must render a decision within thirty days.  See Henton Decl. ¶¶ 13-17, ECF No. 95-1 (citing CBA § 23.C(1)-(6)); AFA's CSF Ex. 1 at HAL00406-07, ECF No. 95-3; AFA's CSF Ex. 2 at HAL000410, ECF No. 95-4; Decl. of Doogan Mahuna ("Mahuna Decl.") ¶¶ 8-11, ECF No. 86-1; Hawaiian Airlines' CSF Ex. 1 at HAL00406-07, HAL000410, ECF No. 86-2.

15, ECF No. 75.  Henton and Akau have also attested that AFA
would have filed such a grievance and taken it to arbitration,
had Debeikes gone to the hearing and been disciplined.  Henton
Decl. ¶ 32, ECF No. 95-1; Decl. of Scott Akau ("Akau Decl.") ¶ 4,
ECF No. 95-2.

        It is also Henton's declaration testimony that AFA
chose to file a MEC grievance, rather than an individual LEC
grievance, in order to attain relief for both Honolulu and Los
Angeles-based flight attendants.  Henton Decl. ¶¶ 5-10, ECF No.
95-1.  Specifically, the Grievance requested that Hawaiian
Airlines "[c]ease and desist refusal to provide documentation in
any and all Company investigations" and "[r]everse the discipline
and reinstate and make whole any and all affected flight[]
attendants that were disciplined or discharged based upon the
investigations."  Grievance, ECF No. 135.

        Henton attests that it is AFA's normal practice to file
MEC grievances, rather than individual LEC grievances, "where a
whole class of Flight Attendants are affected, both in Honolulu,
and in Los Angeles," as a result of a CBA dispute with Hawaiian
Airlines.  Henton Decl. ¶ 10, ECF No. 95-1. This is evidently
because filing an individual "Non-Disciplinary Grievance" under
CBA § 23.C "would do nothing for the Los-Angeles based Flight
Attendants who could be adversely affected by Hawaiian Airlines'
interpretation" of its CBA obligations.  Id. ¶¶ 7-8.  In

addition, had it not filed a MEC grievance, AFA may have had to file individualized LEC grievances "for Mr. Debeikes . . . and then every other Flight Attendant who could be denied [] documents at the investigatory interview stage." Id. ¶ 9.[8/]

Notice of the Grievance was never provided to Plaintiff.  Order at 15, ECF No. 75.  Declarations submitted by AFA indicate that it is not the union's policy or practice to provide individual members with copies of MEC grievances or "disclose files related to open, pending issues." Id. at 14-15.

On May 21, 2013, Hawaiian Airlines informed Debeikes by letter that it had concluded its investigation and believed he had violated the company's Policy and House Rules related to sexual harassment and unprofessional conduct.  A disciplinary hearing was set for May 30, 2013.  Id. at 15.

On May 23, 2013, Plaintiff spoke by telephone with Akau and asked him whether he could retire from Hawaiian Airlines before the disciplinary hearing.  Id. at 15-16.  Akau did not know but said he would find out.  Id. at 16.  The next day,

---

[8/] The Court observes that the Opinion and Award makes clear that the issue of Hawaiian Airlines' withholding of documents had been actively raised in the investigations of just two flight attendants when the Grievance was filed: "Doe I" (evidently, Debeikes) and "Doe II." See Opinion and Award at 3, ECF No. 132.
The Court therefore reads Henton's reference to the "whole class of Flight Attendants [] affected" as referring to AFA's full membership, insofar as all members potentially "could be adversely affected" by Hawaiian Airlines' narrow interpretation of the scope of its CBA obligations to union employees.

having had an AFA representative check with the company, Akau told Plaintiff that retirement would be an option.  Akau also referred Plaintiff to Trumble, who advised Debeikes that he probably would be terminated by Hawaiian Airlines.  Trumble further suggested that by retiring before the hearing, Plaintiff could retain the benefits of continued flight privileges with the company and an employment record free of a harassment-related termination.  Id.[9]

On May 29, 2013, Debeikes tendered a retirement letter to Hawaiian Airlines.  He also signed formal retirement paperwork with the company, for an effective retirement date of May 30, 2013.  Id.  During the meeting[10] at which he signed the paperwork, Debeikes expressed some vacillation regarding retirement and asked whether there were alternative remedies besides termination.  Id. at 17.

---

[9] The Court notes that there is no indication in the record that Akau and Trumble did not remain available to confer with Plaintiff up to and including the day of his retirement, regardless of Henton's unavailability.  Plaintiff has also indicated that he spoke with Akau and Trumble within the two days leading up to his retirement paperwork signing.  His answers to Hawaiian Airlines' interrogatories state that he had a "follow up call with Scott Akau regarding my chances 5/27" and a "call from Jay Trumble, union attorney, on 5/27 or 28, 2013."  Plf. Matthew J. Debeikes' Response to Def. Hawaiian Airlines, Inc.'s First Request for Answers to Interrogatories at 4, ECF No. 55-14.

[10] AFA representatives did not accompany Debeikes to the signing of his retirement paperwork.  Trumble's declaration testimony is that it is AFA's practice not to accompany members to such paperwork signing unless specifically requested by the member.  Order at 17-18, ECF No. 75.

Debeikes' declaration testimony is that a Hawaiian Airlines employee, Gail Kim-Moe ("Kim-Moe"),[11] said "I would be terminated if I attended the May 30, 2013 disciplinary hearing." His declaration testimony is that Kim-Moe's statement was made in the presence of Debeikes' direct supervisor, Cheryl Price ("Price"), Senior Manager, In-Services, who "never corrected Gail Kim-Moe that termination was imminent." Declaration of Plaintiff Matthew J. Debeikes ("Debeikes Decl.") ¶¶ 1-2, ECF Nos. 104-1, 105-1.[12] Plaintiff contends for the first time in his Opposition declarations that he shared Kim-Moe's comment with Henton. See Debeikes Decl. ¶ 13, ECF Nos. 104-1, 105-1.

---

[11] Henton's declaration testimony is that Kim-Moe was, at the time, a Human Resources Business Partner at Hawaiian Airlines who "was not the decisionmaker" as to "whether and/or what disciplinary action should be issued to Mr. Debeikes." Instead, the "Director of Inflight or his/her designee" would have made this decision. Henton Decl. ¶ 31, ECF No. 95-1.

[12] The Court notes that there is some uncertainty in the record as to the exact order of statements by Plaintiff and Kim-Moe at their May 29, 2013 meeting. For example, Plaintiff's initial declaration in this case stated that he had asked Kim-Moe: "'if I would have gone to the Hearing would I have been terminated?' She said [']yes.'" Debeikes Decl. ¶ 19, ECF No. 70-1. Such language would seem to suggest that Plaintiff asked about his chances of termination after submitting his retirement, rather than being informed of Kim-Moe's opinion beforehand.

In any event, it is not disputed that Plaintiff "presented [Kim-Moe] with his signed letter of retirement" at the meeting. Kim-Moe Decl. ¶ 35, ECF No. 55-1. The letter, dated May 29, 2013, is in the record at ECF No. 55-9. It appears plainly to have been prepared by Plaintiff prior to the meeting. It is not a form document, does not use any letterhead, and contains four sentences of typed body text expressing Plaintiff's personal sentiments regarding his retirement.

Plaintiff has not disputed that he was also reminded by Kim-Moe that he did not have to retire and could instead proceed with the hearing.  Order at 17, ECF No. 75.  He contends, however, that "the company put me in a situation where if I chose to attend the hearing and lost (as I was told I would before any witness testified or document was received), I would [be] unemployed with a sexual harassment on my record."  He also cites concerns that he would have had "no way to visit my daughter" if he were terminated, because flight benefits were not guaranteed to terminated (versus retired) employees.  Debeikes Decl. ¶¶ 7-8, ECF No. 105-1.

After Plaintiff retired, he was no longer a member of AFA.  Because AFA may only file grievances on behalf of members, it could not file grievances on Debeikes' behalf from his retirement date forward.  Order at 16 n.10, ECF No. 75. Debeikes' declaration testimony is that he was "unaware that signing the paperwork released AFA from any obligation to represent me."  Id. (citing Debeikes Decl. ¶ 19, ECF No. 70-1). Regardless, uncontroverted declaration testimony submitted by AFA confirms that, to the recollection of AFA's employees and based upon a review of the union's voicemail and email records, Debeikes never communicated to AFA any "desire to have a grievance filed" related to "Hawaiian Airlines having 'predetermined' prior to the disciplinary hearing that it would

20

terminate his employment."   Henton Decl. ¶¶ 27-29, ECF No. 95-1;

Akau Decl. ¶ 3, ECF No. 95-2.[13/]

On or about May 30, 2013, Plaintiff asked Hawaiian

Airlines whether he could rescind his retirement.   Order at 18,

ECF No. 75.   Plaintiff initially was told by a Hawaiian Airlines

employee that he could "un-retire," although the company would

move forward with his disciplinary hearing.   However, Hawaiian

Airlines ultimately conveyed to AFA that it was unwilling to

rescind Plaintiff's retirement, which in turn was conveyed to

Debeikes.   Id.

As noted above, AFA's class-based MEC grievance

regarding Hawaiian Airlines' production of investigation

documents had been filed on April 12, 2015, and it remained

pending at the time of Plaintiff's retirement.   See Grievance,

ECF No. 135.   Henton's declaration testimony is that Hawaiian

Airlines and AFA routinely extend deadlines applicable to

grievance and arbitration proceedings, which take varying amounts

---

[13/] As discussed below, this point was further addressed in
Henton's Supplemental Declaration in the instant briefing, in
response to Plaintiff's declaration.   Henton denies that
Plaintiff informed him of Kim-Moe's comment at his retirement
paperwork signing or expressed concerns regarding his deprivation
of a fair hearing.   Henton also states that he did not receive
any telephone calls from Plaintiff or access his own AFA-issued
cellular telephone while on vacation from May 22, 2013–June 7,
2013.   Supplemental Declaration of Scott Henton ("Henton Supp.
Decl.") ¶¶ 4-6, ECF No. 108-2.   The Court reiterates that Akau
and Trumble remained available to discuss Plaintiff's situation,
apparently up to and including the date of his retirement.

of time to reach resolution.  Henton Decl. ¶¶ 19-21, ECF No. 95-1.  In this instance, the SBA issued its written Opinion and Award on July 15, 2015, over two years after the Grievance initially was filed.  See Opinion and Award, ECF No. 132.

As set forth in that Opinion and Award, the SBA concluded that "the Company violated Section 23.E.10.c with regard to the cases of Doe I and Doe II" (Doe I evidently being Plaintiff).  However, the Opinion and Award limited its remedy to ordering that "[t]he Company shall cease and desist from such violations in future cases."  Id. at 20.  It observed that neither "Doe I" nor "Doe II" filed disciplinary grievances and that "Doe I" (Plaintiff) had already retired.  Id. at 6.

## STANDARD

As noted above, the Court will resolve the instant motions by considering documents outside the pleadings.  The standard of review applicable to summary judgment motions under Rule 56 therefore applies.  Fed. R. Civ. P. 12(d).

A party is entitled to summary judgment on any claim or defense if it can be shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of

materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007). Summary judgment will be granted against a party that fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

The movant has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010). If the movant satisfies its burden, the nonmovant must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly

probative or more than merely colorable,"[14/] <u>LVRC Holdings LLC v.</u> <u>Brekka</u>, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott</u>, 550 U.S. at 378. The court may not, however, weigh conflicting evidence or assess credibility. <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008). If "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250–51.

## **DISCUSSION**

As explained in the Court's prior Order, the Railway Labor Act ("RLA") applies to the airline industry and creates a mandatory arbitration scheme to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions"

---

[14/] The Ninth Circuit has explained that "[l]egal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." <u>Flaherty v.</u> <u>Warehousemen, Garage and Service Station Emp. Local Union No.</u> <u>334</u>, 574 F.2d 484, 486 n.2 (9th Cir. 1978), <u>see also</u> <u>Barcamerica</u> <u>Intern. USA Trust v. Tyfield Importers</u>, 289 F.3d 589, 593 n.4 (9th Cir. 2002). Allegations in the plaintiff's complaint also "do not create an issue against a motion for summary judgment supported by affidavit," <u>Flaherty</u>, 574 F.2d at 486 n.2, and a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact, <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010).

in covered industries.  45 U.S.C. §§ 153, 181.  The statute's
reservation of arbitral jurisdiction in such cases was designed
to promote stability in labor relations and ensure the "prompt
and orderly settlement" of claims outside the courts.  Hawaiian
Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (citing 45
U.S.C. § 151(a)).

Nonetheless, where an employee in a covered industry
contends both that (1) her employer breached a CBA, and (2) her
union breached its DFR in regard to challenging the employer's
CBA violation, she may bring both of her claims in federal court.
This is referred to as a "hybrid § 301/fair representation"
claim.  DelCostello, 462 U.S. at 165.  Such is the nature of
Debeikes' claim in this case.  See generally Am. Compl., ECF No.
80.

The substantive law of hybrid § 301/fair representation
claims demands that a plaintiff prove *both* the union's breach of
the DFR and the employer's breach of the CBA.  See Bliesner v.
Commc'n Workers of Am.,464 F.3d 910, 913-14 (9th Cir. 2006);
Hadley v. Hawaii Gov't Emps. Ass'n, * 2 (D. Haw. Mar. 13, 2006).
The Ninth Circuit has clarified that a plaintiff must demonstrate
each such breach.  If she does not, her hybrid § 301/fair
representation claim is nonviable in its entirety.  See Bliesner,
464 F.3d at 913 (affirming summary judgment without reaching the
issue of the union's DFR violation, because the plaintiff-

employee failed to show that her employer breached the CBA). Accordingly, this Court may not adjudicate a claim against either Defendant individually if Debeikes' claim against the other Defendant is not also viable.[15/]

In his Amended Complaint, Debeikes' hybrid § 301/fair representation claim encompasses the following allegations: "(1) that the AFA failed to even consider a meritorious 23(C) grievance and (2) that Hawaiian predetermined to terminate Debeikes prior to any hearing, i.e. before documentary evidence or witnesses testified; and Debeikes was forced to resign as a result." Opp. to AFA's MTD/MSJ at 2-3, ECF No. 103; Opp. to Hawaiian Airlines' MTD/MSJ at 2, ECF No. 102; see also Am. Compl. ¶¶ 8-14, ECF No. 80. The Court examines Plaintiff's claims in turn and finds that summary judgment is appropriate as to the claims against both Defendants. See infra Sections II-III. As a

_____

[15/] Additional jurisdictional limitations would prevent the Court from adjudicating Plaintiff's claim against Hawaiian Airlines, standing alone. Federal courts exercise original subject matter jurisdiction over breach of DFR claims pursuant to the National Labor Relations Act. See DelCostello, 462 U.S. at 164 (citing Vaca v. Sipes, 386 U.S. 171, 177 (1967)); Nosie v. Ass'n of Flight Attendants-CWA, AFL-CIO, 722 F. Supp. 2d 1181, 1196 (D. Haw. 2010) (citations omitted). Breach of CBA claims, however, are heard on the basis of supplemental jurisdiction related to the "inextricably interdependent" DFR claims presented in hybrid § 301/fair representation cases. DelCostello, 462 U.S. at 164-65; see also Bautista v. Pan Am. World Airlines, Inc., 828 F.2d 546, 551-52 (9th Cir. 1987). Thus, as a jurisdictional matter, this Court may hear Debeikes' breach of CBA claim against Hawaiian Airlines only if he also presents a triable claim against AFA. See Bautista, 828 F.2d at 552.

preliminary matter, however, the Court briefly addresses AFA's class-based MEC grievance and the SBA's July 15, 2015 Opinion and Award.  The Court finds that the Opinion and Award need not affect the Court's resolution of the instant motions, for the reasons explained below.

> **I.  The Opinion and Award on AFA's Class-Based MEC Grievance Does Not Affect the Instant Order**

The Court concludes that it need not consider the SBA's Opinion and Award in resolving the instant motions and need not delay such resolution on the basis of any continuing appeal proceedings related thereto.

AFA filed its class-based MEC Grievance (on behalf of its full membership) on April 12, 2013, as set forth above.  That grievance, of which Plaintiff was not informed, related to "EEOC Investigation Documents" and challenged Hawaiian Airlines' "refusal to provide documentation" during the company's "confidential 'EEOC investigation[s].'"  The grievance requested that Hawaiian Airlines "cease and desist refusal to provide documentation in any and all Company investigations" and "[r]everse the discipline and reinstate and make whole any and all affected flight attendants that were disciplined or discharged based upon [these] investigations."  Grievance, ECF No. 135.

The Opinion and Award, issued over two years later on July 15, 2015, concluded that "the Company violated Section

27

23.E.10.c. [of the CBA] with regard to the cases of Doe I and Doe II," with "Doe I" evidently being Plaintiff.  The Board ordered that Hawaiian Airlines "cease and desist from such violations in future cases."  Opinion and Award at 20, ECF No. 132.  The Board did not, however, order any reinstatement or reversal of discipline for any employees.  To the contrary, the Opinion and Award specifically notes that neither "Doe I" nor "Doe II" filed individual disciplinary grievances, and that "Doe I" (Debeikes) had already retired.  Id. at 6.[16]

By its own terms, the Opinion and Award did not create any relief for Plaintiff as a retired member of AFA.  Plaintiff is therefore incorrect to suggest that the Opinion and Award itself "entitl[es] Plaintiff to relief as to reinstatement and back pay."  Plf. Matthew J. Debeikes' Supp. Br. Regarding the Impact of the Opinion of the Arbitrator at 4, ECF No. 138.  Rather, the Opinion and Award limited its remedy to a prospective cease and desist order applicable during future employee investigations.  As AFA and Hawaiian Airlines emphasize in their supplemental briefs, this relief has no bearing on the Court's

---

[16] The Court observes that, even if Debeikes had been disciplined instead of retiring, there is no guarantee that the Opinion and Award would have awarded him retrospective relief such as reinstatement or backpay.  By the time AFA filed its MEC grievance on April 12, 2013, Plaintiff had already voluntarily attended Hawaiian Airlines' April 5, 2013 investigatory meeting and admitted to the substance of the harassment allegations against him.

decision as to whether an individual remedy may be available for Plaintiff, as a retiree, on his hybrid § 301/fair representation claim against AFA and Hawaiian Airlines.

The Court observes that AFA's underlying Grievance also did not address the merits of Plaintiff's current claim: that Hawaiian Airlines "predetermined to terminate" and/or "constructively discharged" him in violation of the CBA's alleged "due process" guarantees. That allegation is distinct from the claim presented in AFA's MEC Grievance: that Hawaiian Airlines withheld investigatory documents in violation of the CBA's Section 23.E.10.c. Although the SBA's findings may help inform the Court's understanding of this case, they do not resolve the specific claims currently pending before the Court.

The Court also need not delay its resolution of Defendants' MTD/MSJs pending any continuing appeal proceedings related to the Opinion and Award. Hawaiian Airlines has filed a petition to vacate the Opinion and Award, which is currently pending before Magistrate Judge Kurren. See Hawaiian Airlines, Inc. v. Ass'n of Flight Attendants, Civ. No. 13-00369 BMK. As AFA points out in its supplemental brief, arbitration decisions are presumptively final under the CBA's § 24.D.2 and subject only to narrow judicial review. See AFA's Supp. Br. Responding to Minute Order Filed Sept. 8, 2015 at 3, ECF No. 136. More significantly, the fact remains that the Opinion and Award does

29

not create an individual remedy for Plaintiff or affect his rights in this case.  There is, accordingly, no reason to delay resolution of the instant motions pending Hawaiian Airlines' appeal of the Opinion and Award.

Lastly, the Court notes that the Opinion and Award indicates that the SBA "retains jurisdiction over this case" for one year "should any dispute arise about the application of the cease and desist order and the application of Section 23.E.10.c as described in this Opinion."  Opinion and Award at 21, ECF No. 132.  This narrow retention of jurisdiction as to the implementation of the SBA's order does not divest the Court of jurisdiction to resolve Plaintiff's independent hybrid § 301/fair representation claim.

## II.  Plaintiff's Claim against Hawaiian Airlines Is Not Viable

In his Amended Complaint, Debeikes claims that Hawaiian Airlines "constructively discharged Plaintiff without 'just cause'" by "predetermin[ing] to Terminate Plaintiff in violation of the CBA's due process requirement of a fair hearing in accordance with the CBA's provisions set forth in Article 23."  Am. Compl. ¶ 13, ECF No. 80.  In support, Plaintiff's Amended Complaint states that Kim-Moe informed Plaintiff at his retirement paperwork signing of May 29, 2013 that "he would be terminated if he went to [the] hearing" scheduled for the next day.  Id.  According to Debeikes' declaration testimony, Kim-

30

Moe's statement was made in front of his direct supervisor, Price, who "never corrected Gail Kim-Moe that termination was imminent."  Debeikes Decl. ¶ 2, ECF Nos. 104-1, 105-1.[17]

Debeikes contends that this "predetermined" termination violated what he refers to as "the CBA's due process requirement of a fair hearing."  Am. Compl. ¶ 13, ECF No. 80.  He evidently views this due process/fair hearing requirement as implied by the CBA's "express[] provi[sion] that all cases of discharge, for whatever cause, shall be subject to the grievance procedure" and its establishment of procedures for "the presentation, negotiation, settlement or other disposition of grievances."  Id. His position is that "Hawaiian determining to terminate Plaintiff prior to any witness testifying or documents being presented was coercive," and that a "jury question exists as to the voluntariness of Plaintiff's resignation as Hawaiian already told Plaintiff he would be terminated if he went to hearing."  Opp. to Hawaiian Airlines' MTD/MSJ at 4, ECF No. 102.

On these allegations, the Court concludes that it

_____

[17] As noted above, Plaintiff's description of this event in his Amended Complaint differs from his description in his initial declaration in this case.  In that declaration, Plaintiff stated that he had asked Kim-Moe: "'if I would have gone to the Hearing would I have been terminated?'  She said [']yes.'" Debeikes Decl. ¶ 19, ECF No. 70-1.  Such phrasing would seem to suggest that Plaintiff had already submitted his retirement paperwork at the point when Kim-Moe's statement was made.  Nonetheless, for present purposes, the Court will assume that Kim-Moe's comment may have just preceded Plaintiff's retirement.

31

continues to lack jurisdiction to hear Debeikes' breach of CBA claim against Hawaiian Airlines due to his failure to exhaust contractual remedies. In addition, to the extent that Plaintiff might intend his references to "constructive discharge" to present an independent tort claim, such claim is again preempted by his breach of CBA claim. Even if it were not preempted, the Court finds that such a claim would lack merit.

> ### a. The Court Lacks Jurisdiction to Hear Debeikes' Breach of CBA Claim Due to His Failure to Exhaust Contractual Remedies

The Court finds that it lacks subject matter jurisdiction to hear Debeikes' breach of CBA claim where he did not first exhaust contractual remedies available under the CBA. The Court reiterates this legal requirement, as set forth in its prior Order:

> [B]efore suing for an employer's breach of a CBA in a hybrid § 301/fair representation case, an employee must first have exhausted contractual grievance procedures. See, e.g., Jackson v. S. California Gas Co., 881 F.2d 638, 646 (9th Cir. 1989). Courts are to order resort to such grievance procedures "without dealing with the merits of the dispute" over the contract terms. United Paperworkers Int'l Untion, AFL-CIO, et al. v. Misco, Inc., 484 U.S. 29, 37 (1987); Soone v. Kyo-Ya Co., Ltd., 353 F. Supp. 2d 1107, 1115 (D. Haw. 2005). That contractual grievance mechanisms should govern CBA interpretation disputes in the first instance is consistent with legislative policy favoring the resolution of labor disagreements outside the courts. See Soone, 353 F. Supp. 2d at 1115. The Ninth Circuit has also clarified that a plaintiff's failure to exhaust contractual grievance procedures bars a breach

of CBA claim against his employer as well as a breach of DFR claim against his union.  <u>Carr [v. Pac. Maritime Ass'n</u>], 904 F.2d [1313, 1317 (9th Cir. 1990)].

Order at 31, ECF No. 75.

Here, as Plaintiff admits, a comprehensive CBA between AFA and Hawaiian Airlines covered the terms and conditions of employment for flight attendants "during the entire period involved here."  Am. Compl. ¶ 6, ECF No. 80.  The CBA provides for grievance procedures related to both disciplinary actions (including discharge) and non-disciplinary actions.  <u>See</u> AFA's CSF Ex. 1-2, ECF Nos. 95-3, 95-4; Hawaiian Airlines' CSF Ex. 1, ECF No. 86-2.  Plaintiff admits in particular that "all cases of discharge, for whatever cause, shall be subject to the grievance procedure."  Am. Compl. ¶ 13, ECF No. 80.

However, no grievance was filed with respect to Plaintiff's alleged "predetermined termination."  <u>Id.</u>  Debeikes claims that this is so because AFA "failed to investigate and process" such a grievance, even though AFA supposedly was "aware that Defendant Employer predetermined to terminate Plaintiff in violation of the CBA's due process requirement of a fair hearing."  <u>Id.</u>; <u>see also</u> Opp. to AFA's MTD/MSJ at 5, ECF No. 103 ("AFA never intervened or pursued a grievance regarding the denial of a fair disciplinary hearing.").

Three exceptions exist to excuse a plaintiff's failure to exhaust contractual remedies prior to filing a breach of CBA

claim, where: (1) the employee's use of the grievance procedure would be "futile," (2) the employer's conduct repudiates contractual remedies, or (3) the union's actions breach its DFR in handling the grievance.  See Vaca, 386 U.S. at 185; Glover v. St. Louis-San Francisco R.R. Co., 393 U.S. 324, 330 (1969); see also Carr, 904 F.2d at 1317-21 (examining and rejecting Plaintiff's invocation of all three exceptions).  As Hawaiian Airlines points out, Debeikes' Amended Complaint does not actually make *any* allegation that he attempted to pursue CBA remedies with respect to his "predetermined termination" or that any of the foregoing exhaustion exceptions applies to his case. However, the Court independently concludes that no such exception is applicable.

First, Plaintiff has not shown that resort to the CBA grievance procedures would be "futile."  The fact that grievance procedures are administered by union and company representatives does not by itself render resort to such processes futile, nor does the fact that administrators are "likely to rule against the [grievant] on the merits."  Addington v. US Airline Pilots Ass'n, 588 F. Supp. 2d 1051, 1063-64 (D. Ariz. 2008) (citations omitted).  Futility is also generally inapplicable where "the plaintiff never puts his futility theory to the test by filing a protest."  Hawaii Teamsters & Allied Workers, Local 996, IBT v. City Exp., Inc., 751 F. Supp. 1426, 1432 (D. Haw. 1990) (citing

LeBoutillier v. Air Line Pilots Ass'n, 778 F.2d 883 (D.C. Cir. 1985)); see also Hines v. Anchor Motor Freight, 424 U.S. 554, 563 (1990) (a plaintiff may not "sidestep the grievance machinery" under the CBA before he has attempted to use it).

Here, Debeikes did not attempt to grieve his alleged "predetermined termination," either before or after the scheduled disciplinary hearing.  Instead, he retired and filed the instant lawsuit.  He argues that "the Hawaiian tribunal would have been biased against him, i.e., predetermined to terminate him" at his disciplinary hearing.  Opp. to Hawaiian Airlines' MTD/MSJ at 4, ECF No. 102.  In essence, he suggests that it would have been "futile" to attend his disciplinary hearing.  But even assuming arguendo that this was the case, Plaintiff has not offered evidence that it would have been "futile" to initiate a grievance and arbitration in response to the company's actions.  Plaintiff never tested the futility of the CBA's grievance and arbitration procedures, because he simply did not use them.  City Exp., 751 F. Supp. at 1432.

As the Court noted in its prior Order, an employee's choice to retire prior to invoking CBA grievance procedures also does not make resort to such processes "futile."  Order at 35, n.24, ECF No. 75 (citing Thovson v. Behavioral Health Resources, 3:12-cv-05424, 2012 WL 4514431 * 3-5 (W.D. Wash. Oct. 1, 2012); Hope v. Cont'l Baking Co., 729 F. Supp. 1556, 1559 (E.D. Va.

1990), <u>Lucas v. Legal Aid Soc'y</u>, No. CV-88-1670, 1989 WL 15778 *

2 (E.D.N.Y. Feb. 16, 1989)). As the <u>Lucas</u> court observed,

"permitting retired employees to circumvent agreed upon grievance

procedures could, in effect, create a class of 'preferred

claimants' who, at their own convenience, could bypass those

provisions created precisely for resolution of the claims they

would be raising." <u>Lucas</u>, 1989 WL 15778 at * 2.

Second, Plaintiff suggests but fails to demonstrate

that Hawaiian Airlines "repudiated" the CBA's grievance

procedures. Opp. to Hawaiian Airlines' MTD/MSJ at 7, ECF No.

102. His position is that Hawaiian Airlines would not have

offered him "a fair hearing" as to the discipline he was to be

issued. Am. Compl. ¶ 13, ECF No. 80. But this is not evidence

that the company would have refused to participate in a grievance

and arbitration as to that discipline. Exhaustion of contractual

remedies is excused for repudiation "only if the employer

repudiates the specific grievance procedures provided for in the

CBA," such as when it expressly takes the position that "the

grievance procedures d[o] not govern the dispute." <u>Sidhu v.

Flecto Co., Inc.</u>, 279 F.3d 896, 899 (9th Cir. 2002). Plaintiff

offers no such evidence here.

Third, the Court finds that Plaintiff has not raised a

genuine issue of material fact as to whether AFA breached its DFR

by "fail[ing] to investigate or process any grievance regarding

36

the predetermined termination." Am. Compl. ¶ 13, ECF No. 80.
The Court observes that the standard of review for such union
action (or inaction) is high: courts generally must accord union
decisions "substantial deference," recognizing that the union
"must balance many collective and individual interests when it
decides whether and to what extent to pursue a particular
grievance." Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270,
1273 (9th Cir. 1986) (citation omitted).

Ministerial or procedural union actions constitute DFR
breaches where they are arbitrary, discriminatory, or in bad
faith, but an exercise of the union's judgment constitutes a DFR
breach only where it is shown to be discriminatory or in bad
faith. Burkevich v. Air Line Pilots Ass'n, Int'l, 894 F.2d 346,
349 (9th Cir. 1990); Nosie v. Ass'n of Flight Attendants-CWA,
AFL-CIO, 722 F. Supp. 2d 1181, 1196 (D. Haw. 2010). The
grievance process need not be error-free, and a plaintiff
generally cannot recover for a union's mere negligence. Johnson
v. U.S. Postal Serv., 756 F.2d 1461, 1465 (9th Cir. 1985); Nosie,
722 F. Supp. 2d at 1200 (citations omitted).

The Ninth Circuit has also explained that an alleged
breach of the DFR will excuse exhaustion of contractual remedies
in only two situations: (1) where the union has the "sole power"
under the CBA to invoke the grievance process and "wrongful[ly]"
refuses to do so, or (2) where a grievant alleges a breach of the

DFR with regard to the negotiation of the CBA terms themselves. <u>Carr</u>, 904 F.2d at 1319 (citing <u>Vaca</u>, 386 U.S. at 185; <u>Williams v. Pac. Maritime Ass'n</u>, 617 F.2d 1321, 1328 (9th Cir. 1990)).

Plaintiff makes no allegation that AFA breached its DFR in the course of negotiating the CBA terms. He does suggest, however, that AFA was "aware that Defendant Employer predetermined to [t]erminate Plaintiff in violation of the CBA's due process requirement of a fair hearing" and nonetheless "failed to investigate or process any grievance regarding the predetermined termination." Am. Compl. ¶ 13, ECF No. 80; Opp. to AFA's MTD/MSJ at 5, ECF No. 103 ("AFA never intervened or pursued a grievance regarding the denial of a fair disciplinary hearing.")

Plaintiff's theory that AFA failed to appropriately investigate or process this grievance is premised on Debeikes' contention that he "notified AFA [of] the type of comments [Hawaiian Airlines] was making to Plaintiff prior to any hearing (predetermined termination)." Opp. to AFA's MTD/MSJ at 5, ECF No. 103. Specifically, he claims he "informed Scott Henton of HAL's comments to me and asked if I went to hearing and was terminated would I be able to keep my flight benefits." Debeikes Decl. ¶ 13, ECF Nos. 104-1, 105-1.[18] However, the <u>only</u> comment

_____

[18] Plaintiff claims he relayed this information to Henton, notwithstanding Trumble's uncontested testimony that he had
(continued...)

of a Hawaiian Airlines employee that he identifies as having suggested his "predetermined termination" is Kim-Moe's alleged statement that he "would be terminated" if he attended his disciplinary hearing.[19]   Debeikes Decl. ¶¶ 1-2, ECF Nos. 104-1, 105-1.

The Court concludes, for the reasons explained below, that Plaintiff's allegations do not raise a genuine issue of material fact as to whether AFA "wrongfully" refused to invoke any solely-held power that it had to initiate a grievance on Plaintiff's supposed "predetermined termination." Carr, 904 F.2d at 1319.

First, it appears that AFA did not have the "sole" power to file such a grievance on Plaintiff's behalf under the CBA.  According to the agreement's express terms, "Non-Disciplinary Grievances" under CBA § 23(C) may be brought by

---

[18] (...continued)
already told Plaintiff that he thought termination was likely and advised Plaintiff regarding the consequences of termination versus retirement as to his flight benefits.  See Trumble Decl. ¶ 9, ECF No. 52-2.

[19] The parties dispute whether Kim-Moe's statement serves as evidence of Hawaiian Airlines' "predetermination to terminate" him.  Henton points out that Kim-Moe "was not the decisionmaker" as to "whether and/or what disciplinary action should be issued to Mr. Debeikes."  Instead, the "Director of Inflight or his/her designee" would have made this decision.  Henton Decl. ¶ 31, ECF No. 95-1.  However, Debeikes attests that Kim-Moe's statement was made in front of Price, "Senior Manager, In-Services," who did not contradict Kim-Moe's statement.  Debeikes Decl. ¶ 2, ECF Nos. 104-1, 105-1.

"[a]ny Flight Attendant or group of Flight Attendants who has a grievance concerning any action of the Company affecting such Flight Attendant(s)."  CBA § 23(C)(1), AFA's CSF Ex. 1 at HAL00406, ECF No. 95-3; Hawaiian Airlines' CSF Ex. 1 at HAL00406, ECF No. 86-2.  The grievance must be filed in writing but can be signed by either "the grievant(s)" or "his/her representative." Id. § 23(C)(2).  This procedure is in contrast to that for class-action MEC grievances, which can be filed only by "the MEC President, or designee."  Id. § 23(D).

At the hearing of October 22, 2015, the Court asked counsel for AFA and Hawaiian Airlines to address the foregoing CBA provision and whether employees may indeed file their own grievances under CBA § 23(c).  Counsel for AFA was uncertain, but counsel for Hawaiian Airlines indicated that this is a correct understanding of the CBA.  Thus, assuming that Plaintiff himself had the power to initiate a grievance on his own behalf, his failure to exhaust contractual remedies cannot be waived under Carr.

Second, regardless of whether Plaintiff was able to file his own grievance under CBA § 23(c), the Court also finds in the alternative that Plaintiff has not raised a genuine issue of material fact as to whether AFA "wrongfully" refused to pursue a grievance related to his supposed "predetermined termination." This is so for at least two reasons.

40

First, the Court finds that it is not possible to conclude from the available evidence that AFA was even *aware*, prior to Plaintiff's retirement, that Plaintiff believed Hawaiian Airlines "predetermined to terminate" him.  Because Plaintiff retired before making AFA aware of this issue, he foreclosed the union's opportunity to initiate a grievance on such grounds.

Plaintiff's claim that AFA breached its DFR by failing to grieve his "predetermined termination" is premised on his factual contention that he "informed Scott Henton of HAL's comments to me."  Debeikes Decl. ¶ 13, ECF Nos. 104-1, 105-1. Kim-Moe's comment regarding termination – the only one that Plaintiff identifies as having even suggested his "predetermined termination" – was made at some point just before or during the May 29, 2013 meeting during which he tendered his retirement letter to Hawaiian Airlines and signed retirement paperwork.  See id. ¶ 1; see also Order at 16, ECF No. 75.[20]

It is undisputed that neither Henton nor any other AFA representative accompanied Debeikes to his meeting with Kim-Moe.

_____

[20] The Court notes that Hawaiian Airlines' formal communication to Plaintiff indicated that Hawaiian Airlines had not decided upon any discipline, much less that it had "predetermined to terminate" him at the May 30, 2015 disciplinary hearing.  A May 21, 2013 letter to Plaintiff from Ross Yamanuha, Senior Manager of In-Flight Services, stated that "[t]he purpose of the Hearing will be to determine what action, *if any*, will be taken in regards to these alleged violations."  Ltr. from Ross Yamanuha to Plf., Marn Decl. Ex. 4, ECF No. 52-8 (emphasis added).

Order at 17, ECF No. 75.  Plaintiff also appears to have arrived to the meeting with a pre-prepared retirement letter.  See supra n.12.  As noted above, there is some uncertainty regarding the precise order in which statements were made by Plaintiff and Kim-Moe on May 29, 2013.  What is certain, however, is that Plaintiff could not have shared Kim-Moe's comment with Henton before retiring, and that this deprived AFA of any opportunity to grieve Plaintiff's alleged "predetermined termination."

At the Court's hearing of October 22, 2015, Plaintiff's counsel affirmatively stated that Plaintiff shared Kim-Moe's statement with Henton for the first time *after* May 29, 2013, by leaving phone messages for him the following day.  Plaintiff, who was present at the hearing, did not dispute this assertion.

In addition, Henton's unrebutted declaration testimony is that he was on vacation from May 22, 2013-June 7, 2013.  Henton Decl. ¶ 27, ECF No. 95-1.  Henton's supplemental declaration states that Debeikes' assertion that he "informed me of comments made by Gail Kim-Moe or any representative of Hawaiian Airlines on or after May 29, 2013 . . . [is] not true," and that Henton did not receive any telephone calls from Plaintiff or even access his own AFA-issued cellular telephone while on vacation.  Henton Supp. Decl. ¶¶ 4-6, ECF No. 108-2.

Plaintiff does not claim to have informed Akau or Trumble of Kim-Moe's statement, even though he had spoken with

42

Akau and Trumble as recently as May 27-28, 2013 and it appears that they (unlike Henton) were available on May 29, 2013.  <u>See</u> Plf. Matthew J. Debeikes' Response to Def. Hawaiian Airlines, Inc.'s First Request for Answers to Interrogatories at 4, ECF No. 55-14.

The declaration testimony of Debeikes' AFA representatives is, to the contrary, that "AFA was not aware that Hawaiian Airlines breached the CBA by predetermining to terminate Plaintiff before the disciplinary hearing."  Henton Decl. ¶ 9, ECF No. 94-1; Akau Decl. ¶ 3, ECF No. 95-2.  To the recollection of AFA's employees and based upon a review of the union's voicemail and email records, Debeikes never communicated to AFA any desire to have a "predetermined termination" grievance filed against Hawaiian Airlines prior to his retirement.  Henton Decl. ¶¶ 27-29, ECF No. 95-1; Akau Decl. ¶ 3, ECF No. 95-2.

The Court observes that this is the first time in this litigation that Plaintiff has claimed that he shared Kim-Moe's comment with Henton on any date.  He did not identify this allegation in his verified, un-supplemented answers to interrogatories, which requested details of: (1) "each and every incident in which you learned information which has caused you to believe that the AFA breached its duty of fair representation towards you," (2) "each statement (whether oral, written or otherwise) made by Defendant AFA's representatives to Plaintiff,

43

or to any other individual, regarding the allegations contained in the Complaint," and (3) "each and every communication you had with any representative of the [AFA] concerning any grievance you had against [Hawaiian Airlines]."  See Declaration of Stephanie Marn ("Marn Decl.") ¶¶ 6-10, ECF No. 108-1; Plf. Matthew J. Debeikes' Response to Def. AFA's First Request for Answers to Interrogatories ¶¶ 4, 7, ECF No. 108-4; Plf. Matthew J. Debeikes' Response to Def. Hawaiian Airlines' First Request for Answers to Interrogatories ¶ 5, ECF No. 108-5.

Plaintiff belatedly requested leave to pursue further discovery (specifically, deposition testimony and phone records) regarding his communications with Henton, but that request was denied for the reasons explained at length in the Court's Order Affirming the Magistrate Judge's Order Denying Plaintiff Matthew J. Debeikes' Motion to Reopen Discovery, ECF No. 139.

In light of the foregoing, it is impossible to conclude that AFA was made aware that Hawaiian Airlines allegedly "predetermined to terminate" Plaintiff, or that Plaintiff wished to have any related grievance filed, prior to Plaintiff's retirement.[21/]  This is significant because Debeikes was no longer

---

[21/] AFA, in one sentence of its Reply, requests that the Court "find that Plaintiff has submitted his declaration in bad faith and/or is in violation of Rule 11(b) and as such, is sanctionable."  AFA Reply at 11, ECF No. 108.  It appears that the request is premised on the idea that Plaintiff's declaration "contradicts" his answers to interrogatories, which did not
(continued...)

a member of AFA by the time he left the meeting at which Kim-Moe's statement was made, and AFA may only file grievances on behalf of members.  Order at 16 n.10, 59, ECF No. 75.

Plaintiff is correct that, where a union member provides evidence supporting a grievance, a union may breach its DFR where it ignores such grievance or processes it in a "perfunctory manner."  Vaca, 386 U.S. at 194.[22/]  But in the instant case, it does not appear that AFA was informed of any supposed "evidence" of Hawaiian Airlines' "predetermination" to terminate Debeikes until after he retired, if at all.  The Court cannot conclude that a union acts in "perfunctory" manner where a plaintiff, by retiring, forecloses the union's practical opportunity to initiate any action.

The Court notes that although Plaintiff has argued that

----

[21/](...continued)
indicate that Debeikes had spoken to Henton regarding the company's "predetermining to terminate" him.  Id.
       For the reasons discussed herein, the Court finds that it is impossible to find that Plaintiff communicated his concerns regarding "predetermined termination" to Henton prior to his retirement.  It therefore appears unnecessary to consider whether Plaintiff's declaration may be struck as a matter of sanctions. If AFA seeks any additional relief, it must file a separate motion.  See Fed. R. Civ. P. 11(b), (c)(1)-(2).

[22/] The Court observes that this does not mean a union member is guaranteed to have the merits of a particular matter grieved by a union.  As discussed below, "whether and to what extent" it ultimately pursues a grievance is still a matter of the union's judgment.  Dutrisac, 749 F.2d at 1273.  Such discretion may be particularly important where, as here, an employee has already admitted to the merits of the allegations against him.

45

he was "unaware" that his representation by AFA ended upon his retirement, this does not change the actual scope of AFA's duties to him.  As discussed in the Court's prior Order, union members are "'obligated to exhaust union remedies before resorting to a court action . . . [n]ecessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies.'"  Order at 38, ECF No. 75 (quoting <u>Fristoe v. Reynolds Metals Co.</u>, 615 F.2d 1209, 1214 (9th Cir. 1980) (further citation omitted)).

Second, Plaintiff has not demonstrated that the union's failure to initiate a "predetermined termination" grievance (even if AFA had such opportunity, which the Court finds it did not) was arbitrary, discriminatory, or in bad faith, sufficient to breach the DFR.  The burden of such a showing is significant.  To establish "bad faith," Plaintiff must introduce "substantial evidence of fraud, deceitful action, or dishonest conduct" on the part of AFA.  <u>Nosie</u>, 722 F. Supp. 2d at 1200.  To be arbitrary, the union's conduct, considered "in light of the factual and legal landscape" in which it occurred, must be "fairly characterized as so far outside of a range of reasonableness that it is wholly irrational."  <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 66 (1991).  To show discrimination, Plaintiff must demonstrate "substantial evidence of discrimination that is intentional, severe, and unrelated to

46

legitimate union objectives."   <u>Nosie</u>, 722 F. Supp. 2d at 1200.

Plaintiff has not demonstrated bad faith, arbitrariness, or discriminatory animus here.   AFA representatives have submitted uncontroverted declaration testimony that, had Debeikes attended his disciplinary hearing and either been deprived of a fair hearing or felt "dissatisfied with the discipline he was issued," AFA was "willing to file a grievance and take it to arbitration."   Henton Decl. ¶ 32, ECF No. 95-2; Akau Decl. ¶ 4, ECF No. 95-2.[23/]   This is not, therefore, a case in which a union simply refused to file a complainant's grievance at all.

With respect to AFA's grievance-handling strategy, there is no indication that Debeikes was treated differently from any other flight attendants.   And even assuming that AFA was aware of Hawaiian Airlines' "predetermination to terminate" Plaintiff and his desire to file a grievance thereon, Debeikes has not shown that a union decision to grieve that

---

[23/] The same was communicated to Plaintiff before his retirement.   Akau's uncontested declaration testimony is that he spoke to Plaintiff by telephone on May 24, 2013 regarding the upcoming disciplinary hearing and explained that "if [Plaintiff] was not satisfied with the Company's decision, a "grievance could be filed, which could culminate in arbitration, and the decision of the arbitrator was final."   Akau Decl. ¶ 20, ECF No. 52-3.
Trumble has also attested that he told Plaintiff before the April 5, 2013 investigatory meeting that "we could review the documents and witness statements prior to his making any statements on the record, if he would just wait until HAL took disciplinary action against him, if at all."   Trumble Decl. ¶ 10, ECF No. 72-1.

predetermination after (rather than before) his disciplinary hearing was arbitrary or in bad faith.[24]   The Court is obligated to extend the union's decisionmaking "substantial deference," recognizing that the union "must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance." Dutrisac, 749 F.2d at 1273.

The Court observes that there is also a difference between the union, on the one hand, knowing that Hawaiian Airlines "predetermined to terminate" Plaintiff in a violation of due process and, on the other, simply being aware that termination was likely.  Trumble had evidently provided the same opinion to Debeikes prior to his retirement.  Order at 16, ECF No. 75.  Nothing about this advice appears to have been arbitrary, discriminatory, or reflective of bad faith.  Debeikes had already admitted to allegations of sexual harassment at his April 5, 2013 investigatory interview, and Hawaiian Airlines formally concluded that Plaintiff had violated the company's Policy and House Rules regarding sexual harassment and unprofessional conduct.  Those policies provide that discipline for their violation may include discharge.  Id. at 11, 15, ECF No. 75.

_____

[24]  It seems evident, for example, that such a grievance may have had stronger prospects for success if it were filed after an actual disciplinary decision had issued (rather than beforehand, premised on a theoretical "predetermination to terminate" Plaintiff at a future hearing).

48

In light of the foregoing, the Court is unable to conclude that AFA had the "sole" power to invoke the CBA's grievance procedures or that it "wrongfully" refused to do so related to Debeikes' "predetermined termination." Carr, 904 F.2d at 1319. Because Plaintiff retired before exhausting contractual remedies and has raised no genuine issue of material fact as to the applicability of an exception to the requirement that he do so, the Court is without jurisdiction to adjudicate his breach of CBA claim. The Court therefore GRANTS summary judgment in favor of Defendants with respect to whether Defendant Hawaiian Airlines breached the CBA.[25]

> **b.     Any Separate "Constructive Discharge" Claim Suggested in Plaintiff's Amended Complaint Is Preempted and Unmeritorious**

It is somewhat unclear whether Plaintiff intends in the Amended Complaint to invoke any independent cause of action involving "constructive discharge" *separate* from his breach of CBA claim. The Amended Complaint itself indicates that this is not the case. Rather, Plaintiff claims he was injured "[a]s a result of Plaintiff's [constructive] discharge by Defendant employer, in violation of plaintiff's rights under the collective

---

[25] Consistent with the Ninth Circuit's ruling in Bliesner, 464 F.3d at 913-14, this result mandates judgment in favor of Defendants as to Plaintiff's hybrid § 301/fair representation claim against both Hawaiian Airlines and AFA. Nonetheless, as an alternative basis for its ruling, the Court reviews Plaintiff's claims related to "constructive discharge" and breach of DFR below.

bargaining agreement." Am. Compl. ¶ 14, ECF No. 80. Put differently, Debeikes argues that Hawaiian Airlines breached the CBA's supposed "due process requirement of a fair hearing" when it "predetermined to Terminate" (i.e., constructively discharged) him.[26/] Id. ¶¶ 13. The situation is thus distinct from that presented by Plaintiff's original Complaint, which appeared more clearly to suggest separate claims related to breach of CBA and "constructive discharge" against Hawaiian Airlines. See Order at 25-26, ECF No. 75.

For the sake of clarity, however, the Court concludes that if the Amended Complaint intended to suggest any independent claim premised on "constructive discharge," it would be preempted by Plaintiff's breach of CBA claim.[27/] Even if it were not preempted, the Court would not find it meritorious based on the

---

[26/] Hawaiian Airlines reads the Amended Complaint this way as well: "[T]he First Amended Complaint does not plead any state law claim for constructive discharge. Instead, Plaintiff has attempted to shoehorn his claim of constructive discharge into his hybrid breach of CBA/duty of fair representation claim by alleging that Hawaiian's predetermination to terminate him violated the CBA Section 23's due process requirements." Mem. in Support of Hawaiian Airlines' MTD/MSJ at 19, ECF No. 85.

[27/] To the extent that any such "constructive discharge" claim may be premised on Hawaii law, the Court further clarifies that "constructive discharge" does not appear to be a stand-alone cause of action. A plaintiff claiming the elements of "constructive discharge" must do so in furtherance of another cause of action, such as "wrongful termination," because constructive discharge is "not a separate cause of action in and of itself." See Practice Note, Hawaii Model Civil Jury Instruction No. 16.7.

factual allegations in the Amended Complaint.  Accordingly, the Court GRANTS summary judgment in favor of Defendants as to any independent claim premised on "constructive discharge" that may be suggested in Plaintiff's Amended Complaint.

### i.   Plaintiff's Claim Premised on "Constructive Discharge," If Any, Is Preempted by His Breach of CBA Claim

As the Court explained in its prior Order, a constructive discharge claim involving the parties' dispute over the CBA's terms and Hawaiian Airlines' obligations thereunder is preempted by Plaintiff's hybrid § 301/fair representation cause of action.  Order at 27-28, ECF No. 75 (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1995); Evangelista v. Inlandboatmen's Union of the Pacific, 777 F.2d 1390, 1401 (9th Cir. 1985); Carter v. Smith Food King, 765 F.2d 916, 921 (9th Cir. 1985)).  To the extent that Plaintiff intends to state any separate claim premised on "constructive discharge" in the Amended Complaint, it is again preempted by his breach of CBA claim.

The Ninth Circuit has explained that when the resolution of independent claims are "substantially dependent upon an interpretation of the terms of a labor contract, the claim must either be treated as a section 301 claim or dismissed as preempted."  Evangelista, 777 F.2d at 1400 (finding wrongful discharge claim preempted where it was premised on whether CBA

authorized plaintiff's reduction in seniority when she accepted other work during leave of absence).  Courts examining this issue look to whether an independent claim is premised on "the same acts and conduct which formed the basis of [plaintiff's] section 301/breach of duty claims."  Carter, 765 F.2d at 921.

Hawaiian Airlines argues that Plaintiff's "present claim of constructive discharge is equally dependent on the interpretation of the CBA as the prior one asserted in the original Complaint."  Mem. in Support of Hawaiian Airlines' MTD/MSJ at 19, ECF No. 85-1.  The Court agrees.  Here, Debeikes claims that "Plaintiff's [constructive] discharge by Defendant employer" is exactly what "violat[ed] [] plaintiff's rights under the collective bargaining agreement."  Am. Compl. ¶ 14, ECF No. 80.  The viability of Plaintiff's "constructive discharge" theory is thus entirely dependent on the scope of the CBA's alleged "due process requirement of a fair hearing" and whether Hawaiian Airlines violated it by "predetermining to terminate" Debeikes before his disciplinary hearing.  Id. ¶ 13.

As the Court observed previously, if Plaintiff were arguing "constructive discharge" on grounds not involving the company's interpretation of its obligations under the CBA, it would "not necessarily" be preempted.[28]  Order at 28 n.20, ECF

---

[28] This statement did not mean, of course, that *any* other "constructive discharge" theory offered by Plaintiff would be
(continued...)

No. 80.  For example, a claim might not be preempted if Hawaiian Airlines "made pre-employment representations to [him] concerning whether [he] would be an employee at will or whether [he] could be discharged only for good cause."  Stratoti v. Kroger Co., 184 F. Supp. 2d 718, 722 (S.D. Ohio 2002).  A claim might also be viable if it were premised on "rights and duties" owed to Plaintiff under a distinct legal obligation, such as state human rights law, rather than a supposed due process provision of the CBA.  See Brosius v. Verizon Commc'ns, Inc., Civ. No. 1:11-cv-38, 2011 WL 3269677 * 4 (N.D.W.V. July 29, 2011) (plaintiff's constructive discharge claim was not preempted by federal labor law where it was premised on violations of the West Virginia Human Rights Act and would not require consideration of the CBA).

But where, as here, Plaintiff's "right not to be discharged," if any, "would depend upon the rights granted to [him] by the collective bargaining [agreement]," an independent claim related to constructive discharge is preempted.  Stratoti, 184 F. Supp. 2d at 722; see also Andrews v. Louisville & N.R. Co., 406 U.S. 320, 324 (1972) (where "the only source of

---

[28]/(...continued)
viable.  Plaintiff is incorrect to argue simply that "Plaintiff pled a constructive discharge claim on different grounds not involving the company's interpretation of the CBA, so it should not be preempted by Plaintiff's hybrid [Section] 301 fair representation claim."  Opp. to Hawaiian Airlines' MTD/MSJ at 3, ECF No. 102.  As discussed above, his current "constructive discharge" theory continues to hinge on an interpretation of the CBA.

petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement," a plaintiff's "characeriz[ation of] his claim as one for 'wrongful discharge' does not save it from the [Railway Labor Act's] mandatory provisions for the processing of grievances").

### ii.   Even If It Were Not Preempted, Plaintiff's "Constructive Discharge" Argument Is Unavailing

As explained above, the Amended Complaint – in contrast to Plaintiff's original complaint – does not actually appear to suggest any theory of "constructive discharge" separate from Plaintiff's breach of CBA claim.  Even if it intended to do so, any separate claim involving "constructive discharge" would be preempted by Debeikes' breach of CBA claim (which the Court has found it lacks jurisdiction to hear).

Nonetheless, as a further alternative basis for its ruling, the Court finds that Plaintiff's "constructive discharge" argument in the Amended Complaint lacks merit.  As discussed above, Plaintiff suggests that he was "constructively discharged" without "just cause" as a result of Hawaiian Airlines' "predetermin[ation] to Terminate Plaintiff in violation of the CBA's due process requirement of a fair hearing."  Am. Compl. ¶ 13, ECF No. 80.  Even if such a requirement is implied by the

CBA, and even if "predetermined termination" would violate it,[29/] the Court reiterates that "[r]etirement decisions are presumed to be voluntary," and that this presumption "generally is overcome only when a plaintiff shows that his retirement was the product of the employer's deception or coercion."  Order at 28, ECF No. 75 (citing Morris v. McHugh, 997 F. Supp. 2d 1144, 1164 (D. Haw. 2014)).

Here, there is no evidence that Debeikes was deceived regarding Hawaiian Airlines' position.  At most, Plaintiff has complained that *AFA* was less than forthcoming regarding its grievance strategy related to CBA § 23.E.10.c.  This does not mean that *Hawaiian Airlines* deceived him regarding any employment issues, including the likely results of its disciplinary hearing. The Amended Complaint simply argues that the company "constructively discharged Plaintiff without 'just cause'" by "predetermin[ining] to [t]erminate" him without a fair hearing. Am. Compl. ¶ 13, ECF No. 80.  That allegation does not invoke deception.

_____

[29/] The Court only assumes the validity of these arguments *arguendo* and specifically declines to issue an advisory opinion as to their merits.  Where contractual grievance procedures exist to resolve such disputes, courts are to "order resort to the private settlement mechanisms without dealing with the merits of the dispute."  Soone, 353 F. Supp. 2d at 1115-16.  If another flight attendant in future seeks to invoke the CBA's grievance procedures (as Debeikes did not) to challenge an alleged "predetermined termination" as contrary to Hawaiian Airlines' CBA obligations, the Court is wary of injecting an advisory opinion into that arbitration.

Meanwhile, to prove coercion, Plaintiff would need to show that the company imposed the terms of his resignation, that he had "no realistic alternative but to resign," and that his resignation was the product of the company's improper acts. Morris, 997 F. Supp. 2d at 1144.  The Court already concluded that, regardless of Kim-Moe's statement, Debeikes has not shown that he had "no realistic alternative" to retirement, given that the CBA's grievance procedures remained available to him.  Order at 30, ECF No. 75.

Plaintiff argues that "Hawaiian determining to terminate Plaintiff prior to any witness testifying or documents being presented was coercive within the meaning of Morris v. McHugh," notwithstanding that Plaintiff had already admitted his guilt as to the harassment allegations raised at the April 5, 2013 investigatory meeting, because "Plaintiff is raising that the Hawaiian tribunal would have been biased against him, i.e., predetermined to terminate him."  Opp. to Hawaiian Airlines' MTD/MSJ at 4, ECF No. 102.  He also cites to a variety of cases indicating that employees can prove constructive discharge by showing that they were faced with a choice to resign or be fired and face a deprivation of income.  Id. at 5-7.

None of Plaintiff's cited cases, however, involved unionized employees with access to contractual grievance

procedures as an alternative to resignation.[30/]  Moreover, one
case cited by Plaintiff, Parker v. Bd. of Regents of Tulsa Jr.
College, 981 F.2d 1159 (10th Cir. 1992), is actually unfavorable
to his position.  That case involved the resignation of a tenured
faculty member who was offered a due process hearing similar to
what was available to Debeikes.  In that case, the Tenth Circuit
concluded that the plaintiff "voluntarily chose to resign and was
not constructively discharged" where she "chose to end her
employment without a hearing and not to avail herself of the
available due process procedures." Id. at 1162-63.  Similarly,
Plaintiff chose not to avail himself of either his disciplinary
hearing or any of the grievance procedures under the CBA, through
which he may have challenged the supposed unfairness of the
hearing that he anticipated receiving.

Additionally, a choice between resignation and
termination "does not establish that the resignation was
involuntary, unless the employer lacked good cause to believe
that there were grounds for termination." Id. at 1162 (citations
omitted).  Here, as noted above, Debeikes had already admitted to
allegations of sexual harassment at his April 5, 2013

---

[30/]One case cited by Plaintiff does not even involve the
concept of constructive discharge. Ward v. Village of
Monroeville, 409 U.S. 57, 61-62 (1972) (cited in Opp. to Hawaiian
Airlines' MTD/MSJ at 6, ECF No. 102) examined the
constitutionality of a city mayor's service as judge in a traffic
case against the plaintiff.

investigatory interview, and Hawaiian Airlines had informed
Plaintiff by letter of May 21, 2013 that the company had
"completed its investigation into [his] alleged misconduct" and
"believe[d] that [Plaintiff] violated the [] House Rules and
Company Policies."  Ltr. from Ross Yamanuha to Plf., Marn Decl.
Ex. 4, ECF No. 52-8.  Both the Policy and House Rules prohibit
sexual harassment and indicate that it may result in discipline,
including discharge.  Id. at 3-4.  It therefore appears that
Hawaiian Airlines had sufficient "cause to believe that there
were grounds for termination."

          For the foregoing reasons, the Court concludes that
Plaintiff's argument that he was "constructively discharged,"
even if it were not already preempted by his breach of CBA claim,
lacks merit.

### III. Plaintiff's Claim against AFA Is Not Viable

          The second prong of Plaintiff's hybrid § 301/fair
representation cause of action is his claim that AFA breached its
DFR.  As noted above, under Bliesner, 464 F.3d at 913-14,
Plaintiff's hybrid claims against both Hawaiian Airlines and AFA
fail following the Court's conclusion that his breach of CBA
claim is not viable. Nonetheless, as an alternative basis for its
ruling, the Court examines below Plaintiff's remaining claims
related to AFA's alleged breach of the DFR and finds none of them
meritorious.

Plaintiff alleges that AFA breached its DFR in three ways.[31/]  First, Plaintiff suggests that AFA breached its DFR in failing to investigate or process a grievance related to his "predetermined termination," in violation of "the CBA's due process requirement of a fair hearing."  Am. Compl. ¶ 13, ECF No. 80.  For the reasons explained above, the Court concludes that this breach of DFR claim is without merit and GRANTS summary judgment in favor of Defendants as to such claim.

Second, Plaintiff contends that AFA breached its DFR because it "failed to notify Plaintiff that Defendant Union had filed a MEC grievance involving Article 23.E.10.c," because he would have awaited the outcome of that grievance before deciding whether to retire.  Id. ¶ 12.  However, this question was squarely addressed in the Court's prior Order, wherein it granted Defendants' motions for summary judgment "with respect to whether Defendant AFA breached the DFR by failing to inform Debeikes that

---

[31/] The Court briefly addresses an additional issue suggested by Plaintiff's counsel for the first time at the Court's October 22, 2015 hearing: that AFA never advised Plaintiff he would be able to submit mitigating evidence at Hawaiian Airlines' disciplinary hearing.

Oral argument is not evidence sufficient to defeat summary judgment.  Flaherty, 574 F.2d at 486 n.2.  Moreover, Plaintiff's counsel's assertion is contradicted by the written record.  Akau's declaration testimony, which Plaintiff did not contest, is that he spoke with Plaintiff by telephone on May 24, 2013 regarding "what [Plaintiff] could expect at the disciplinary hearing" and specifically informed him that "he could explain his side of the story and make all of his arguments to mitigate any disciplinary action."  Akau Decl. ¶ 20, ECF No. 52-3.

it had filed a grievance with respect to CBA § 23.E.10.c." Order at 49, ECF No. 75.

The Court's prior conclusion is now "law of the case." It should govern the same issue in subsequent stages of litigation unless "clearly erroneous" and likely to "work a manifest injustice." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). Courts have discretion to depart from the "law of the case" where they are presented with new evidence, an intervening change in law, or changed circumstances. <u>See</u> <u>U.S. v. Alexander</u>, 106 F.3d 874, 876 (9th Cir. 1997) (citing <u>Thomas v. Bible</u>, 983 F.2d 152, 155) (9th Cir. 1993)). Here, however, the Court has not been presented with new or different evidence sufficient to reconsider its prior conclusion, which it does not find to have been clearly erroneous (or erroneous at all, for that matter) or likely to work a manifest injustice.[32/] The Court therefore

---

[32/] The Court does note that the Opinion and Award, issued on July 15, 2015, provides some additional information regarding AFA's class-based Grievance that was not available at the time of the Court's February 17, 2015 Order. Specifically, the Opinion and Award clarifies that the issue of document withholding under CBA § 23.E.10.c had been actively raised during the investigations of only two Hawaiian Airlines employees (one of which was Plaintiff) when the Grievance was filed.

Plaintiff has not moved for reconsideration of the Court's prior Order on this basis. Regardless, the Court would not consider its prior findings to be clearly erroneous (or erroneous at all, for that matter) or likely to work a manifest injustice in light of this new information. As explained in the Court's prior Order, AFA articulated a non-discriminatory, good-faith basis for its policy against disclosing class-based grievances to individual union members. Moreover, the Court's finding on that

(continued...)

GRANTS summary judgment in favor of Defendants with respect to whether AFA breached the DFR by failing to notify Plaintiff that AFA had filed a MEC grievance involving CBA § 23.E.10.c.

Third, Plaintiff argues that AFA breached its DFR by failing to "investigate and consider that Plaintiff was entitled to pursue [a grievance under] Article 23.C, entitled 'Non-Disciplinary Grievances[,]' regarding Hawaiian Airlines' provision of documents."  Am. Compl. ¶¶ 7-10, ECF No. 80. Plaintiff claims that if such a grievance had been filed, he "would have been entitled to a speedy resolution of this issue within approximately 55 days."  Id. ¶ 11.  According to Plaintiff, AFA's "fail[ure] to even consider" filing such a grievance on his behalf "was in reckless disregard for the rights of plaintiff."  Opp. to AFA's MTD/MSJ at 3, ECF No. 103.  He does not dispute, however, that AFA did file a MEC class-based grievance regarding Hawaiian Airlines' provision of investigation documents.  Order at 14, ECF No. 75.

In support of his argument, Plaintiff cites to Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir. 1985), which states that "courts will interfere with union decisions about employee grievance proceedings only if a union shows

--------

[32]/(...continued)
issue served only as an alternative basis (as here) for its summary judgment ruling, given that Plaintiff's breach of CBA claim against Hawaiian Airlines was not viable.  See Order at 43-49, ECF No. 75.

reckless disregard for the rights of an employee." That case, however, does little to bolster his position. There, the Ninth Circuit held that a union had not breached its DFR, even where it spent only an hour and a half investigating and preparing the plaintiff's case for arbitration and failed to call a key witness, because such actions did not reflect "egregious disregard" for his rights. Instead, they were "at most errors of judgment, and not evidence of breach of the duty of fair representation." Id. at 1483.

A breach of the DFR may be found where a union's act "extinguishes the employee's right to pursue his claim," such as where a union fails to meet a deadline to file a grievance and thereby "cut[s] off [Plaintiff's] resort to the mandatory grievance procedure, which was the only remedy for his discharge." Dutrisac, 749 F.2d at 1274. But an employee has "no absolute right to have his grievance arbitrated," and a breach of the DFR "is not established merely by proof that the underlying grievance was meritorious." Vaca, 386 U.S. at 195.

In this case, Plaintiff has not demonstrated that AFA acted in "reckless disregard" of his rights or "extinguished" his opportunity to grieve his complaint regarding Hawaiian Airlines' provision of investigation documents. To the contrary, it is undisputed that AFA did file a MEC class-based grievance regarding that dispute. Order at 14, ECF No. 75. The MEC

grievance sought relief on behalf of all affected Hawaiian Airlines flight attendants, including Debeikes.  Henton Decl. ¶ 5, ECF No. 95-1.

In addition, Trumble's declaration testimony is that, had Plaintiff gone through with his disciplinary hearing, AFA would have filed an individual LEC grievance on his behalf regarding the company's denial of documents and any discipline he was issued.  Order at 15, ECF No. 75.  Henton and Akau have also attested that AFA would have filed the grievance and taken it to arbitration, had Debeikes gone to the hearing and been disciplined.  Henton Decl. ¶ 32, ECF No. 95-1; Akau Decl. ¶ 4, ECF No. 95-2.

To the extent that Plaintiff would have preferred that Hawaiian Airlines' actions be challenged through a different form of grievance (an individual "Non-Disciplinary Grievance") prior to his retirement, he has not demonstrated that AFA's failure to do so was arbitrary, discriminatory, or in bad faith.  Even where a plaintiff's grievance may have merit, a union does not breach its DFR where it "deliberated the alleged meritorious argument" and "can provide an explanation for its decision not to pursue" it.  Slevira v. Western Sugar Co., 200 F.3d 1218, 1221 (9th Cir. 2000) (finding no breach of the DFR where union considered but decided not to pursue grievance on grounds proposed by the plaintiff).

Here, AFA considered the subject of Debeikes' proposed grievance and affirmatively pursued it through a MEC class-based grievance.  The union has also articulated rational reasons for its strategy of pursuing the grievance on a class basis, rather than through individual grievances.  Henton has attested that AFA chose to file a MEC grievance in order to attain relief for both Honolulu and Los Angeles-based flight attendants.  Henton Decl. ¶¶ 5-10, ECF No. 95-1.  His uncontroverted declaration testimony is that it is AFA's normal practice to file MEC grievances, rather than individual LEC grievances, "where a whole class of Flight Attendants are affected, both in Honolulu, and in Los Angeles," by a CBA dispute with Hawaiian Airlines.  Id. ¶ 10. Evidently, filing an individual "Non-Disciplinary Grievance" would "do nothing for the Los-Angeles based Flight Attendants who could be adversely affected by Hawaiian Airlines' interpretation" of its CBA obligations.  Id. ¶¶ 7-8.  In addition, had AFA used individual grievances, it would have had to file one "for Mr. Debeikes . . . and then every other Flight Attendant who could be denied [] documents at the investigatory interview stage" thereafter.  Id. ¶ 9.[33/]

_____

[33/] The Court notes that while there were just two flight attendants who had been deprived of investigatory documents at the time the MEC Grievance was filed, the position of Hawaiian Airlines clearly indicated that it would continue its practice to withhold investigatory documents in all similar cases in future. Furthermore, in any event, Plaintiff cannot prove a DFR breach on
(continued...)

64

Plaintiff's remaining argument appears to be that, had an individual grievance been filed on his behalf prior to his retirement, it would have "entitled [him] to a speedy resolution of this issue within approximately 55 days." Am. Compl. ¶ 11, ECF No. 80.   Presumably, Debeikes lodges this complaint in an attempt to suggest that AFA's class-based grievance strategy was in bad faith, where it could have been resolved on an individual basis more quickly.   A close reading of the CBA,[34] however, shows that the argument lacks any factual basis.

There are certain timing limitations applicable to "Non-Disciplinary Grievances" under the CBA:

First, a grievance must be filed within 60 days of when a flight attendant knew or reasonably would have known of the facts on which it is based.

Second, the Director of Inflight Services or his designee must schedule a meeting within 10 days of receiving the grievance.

Third, if the parties cannot resolve the dispute,

---

[33] (...continued)
the basis of AFA's mere negligence.   Where the union has exercised its judgment, its conduct must be shown to have been discriminatory or in bad faith, established through "substantial evidence of fraud, deceitful action, or dishonest conduct." Nosie, 722 F. Supp. 2d at 1200.   The Court finds that Plaintiff's allegations do not rise to this level.

[34] The Court notes that Plaintiff's own Amended Complaint explicitly incorporates the CBA by reference.   Am. Compl. ¶ 6, ECF No. 80.

Hawaiian Airlines shall, upon request, forward the grievance to the Vice President of Inflight Services or his designee, who must evaluate the appeal and furnish a written decision within fifteen days of the meeting.

Fourth, the grievant may appeal that decision to the SBA within thirty days.  The CBA does not, however, appear to require the SBA to schedule a hearing on such appeal within any set number of days.

Fifth, once the appeal hearing is held, the SBA must render a decision within thirty days.  See Henton Decl. ¶¶ 13-17, ECF No. 95-1 (citing CBA § 23.C(1)-(6)); AFA's CSF Ex. 1 at HAL00406-07, ECF No. 95-3; AFA's CSF Ex. 2 at HAL000410, ECF No. 95-4; Decl. of Doogan Mahuna ("Mahuna Decl.") ¶¶ 8-11, ECF No. 86-1; Hawaiian Airlines' CSF Ex. 1 at HAL00406-07, HAL000410, ECF No. 86-2.

Based on the foregoing, the SBA apparently has unlimited discretion as to the scheduling of grievance hearings under the CBA.  There is therefore no competent evidence that Debeikes would have been "entitled to a  speedy resolution" of a "Non-Disciplinary Grievance" within any set number of days, much less 55.  Moreover, Henton's declaration testimony is that Hawaiian Airlines and AFA routinely extend deadlines applicable to grievance and arbitration proceedings.  Henton Decl. ¶¶ 19-21,

ECF No. 95-1.[35/]  Although there is, of course, no guarantee that such extensions would have occurred in Plaintiff's case, the possibility of extensions further undercuts Plaintiff's theory that he would have been "entitled" to a Non-Disciplinary Grievance resolution within 55 days.[36/]  Plaintiff has not produced evidence to place Henton's assertion in genuine dispute.[37/]

The Court finds that no genuine issues of material fact remain and accordingly GRANTS summary judgment in favor of Defendants as to whether AFA breached the DFR by failing to file a CBA § 23.C grievance on Plaintiff's individual behalf regarding Hawaiian Airlines' provision of investigation documents.

---

[35/] This is consistent with the CBA, which provides that time limits applicable to grievances and SBA proceedings may be extended by mutual agreement of Hawaiian Airlines and AFA.  AFA's CSF Ex. 1 at HAL000409, Ex. 2 at HAL000413, ECF Nos. 95-3, 95-4; Hawaiian Airlines' CSF Ex. 1 at HAL000409, HAL000413, ECF No. 86-2.

[36/] The Court observes that although it was a different class-based form of grievance, it took more than two years from its date of filing, April 12, 2013, for the MEC Grievance to reach a decision from the SBA, on July 15, 2015.  This further corroborates Henton's testimony that grievance proceedings between AFA and Hawaiian Airlines are often protracted.

[37/] Plaintiff's Concise Statement on this issue merely indicates: "Plaintiff Objects to this fact being irrelevant and speculative as to whether any extensions would have been agreed upon in his potential CBA 23.c[]grievance."  Plf.'s CSF – AFA ¶ 28, ECF No. 105.  This does not meet his burden under Federal Rule of Civil Procedure 56 to show that a fact is genuinely disputed by "citing to particular parts of materials in the record" or showing that AFA "cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that summary judgment is granted as to:

Defendant Hawaiian Airlines, Inc.'s Motion to Dismiss, or in the Alternative, Grant Summary Judgment, ECF No. 85;

The Substantive Joinder of Association of Flight Attendants-CWA, AFL-CIO in Defendant Hawaiian Airlines, Inc.'s Motion to Dismiss, or in the Alternative, Grant Summary Judgment [Doc. No. 85], ECF No. 90;

Defendant Association of Flight Attendants-CWA, AFL-CIO's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 94; and

Defendant Hawaiian Airlines, Inc.'s Joinder to Defendant Association of Flight Attendants-CWA, AFL-CIO's Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. 94], ECF No. 99.

The Clerk of the Court is instructed to close the case.

68

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 28, 2015.



_____
Alan C. Kay
Senior United States District Judge

Debeikes v. Hawaiian Airlines, Inc. et al., Civ. No. 13-00504 ACK-RLP, Order Granting Summary Judgment as to the Motions to Dismiss or in the Alternative for Summary Judgment of Defendants Hawaiian Airlines, Inc. and Association of Flight Attendants-CWA, AFL-CIO.